UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ALTAMESE DANIEL,

                            Plaintiff,                      **COMPLAINT**

      -v-                                              **JURY TRIAL**
                                                                  **DEMANDED**

THE CITY OF NEW YORK; New York City
Police Department Officer ("P.O.") STEVEN
ORLANDO, Shield No. 27320; P.O. JAMES
GHERARDI, Shield No. 3975; P.O. DUNN, first
name and Shield No. unknown; P.O. KROLICK,
first name and Shield No. unknown; LIEUTENANT
("LT.") CLARENCE HOPKINS, Shield no. unknown,
in their individual and official capacities,

                            Defendants.

-----------------------------------------------------------x

**PRELIMINARY STATEMENT**

1) This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983.

2) Plaintiff ALTAMESE DANIEL's rights were violated when officers of the NEW YORK CITY POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal basis seized, detained, arrested and used gratuitous, unlawful force against the plaintiff. By reason of defendants' actions, including their unreasonable and unlawful conduct, unreasonable search, protracted seizure, failure to sufficiently investigate and turn over exculpatory evidence, arrest without probable cause, abuse of process,

1

malicious prosecution, and deliberate indifference to plaintiff's medical needs, plaintiff was deprived of her constitutional rights.

3) Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4) This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

5) Venue is proper pursuant to 28 U.S.C. § 1391 in that plaintiff's claim arose in the Eastern District of New York.

6) An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

7) Plaintiff respectfully demands a trial by jury in this action on each claim of damage.

## PARTIES

8) Plaintiff ALTAMESE DANIEL, is and was at all times relevant to this action, a resident of the County of Queens in the State of New York.

9) Defendant, THE CITY OF NEW YORK, is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The Defendant assumes the risks incidental to the maintenance of

a police force and the employment of police officers as said risks attach to the public consumers of the services provided by NYPD.

10) Defendants New York City Police Department Officer ("P.O.") STEVEN ORLANDO, Shield No. 27320 ; P.O. JAMES GHERARDI, Shield No. 3975; P.O. DUNN, first name and Shield No. unknown; P.O. KROLICK, first name and Shield No. unknown; LIEUTENANT ("LT.") CLARENCE HOPKINS, Shield no. unknown are and were at all times relevant herein, officers, employees and agents of the NYPD. The individual defendants are being sued herein in their individual and official capacities.

11) At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

12) Defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice and gross disregard for plaintiff's rights.

13) At all relevant times, the defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## STATEMENT OF FACTS

14)  The events described herein occurred principally in the St. Albans neighborhood of Queens, on the morning of March 22, 2013.

15)  On that morning, plaintiff ALTAMESE DANIEL, was at her place of residence, on 194-41 111th Road, where she lived with several roommates.

16)  At or about five o'clock AM on the morning of March 22, 2013, Plaintiff was wrongfully arrested by defendant P.O. STEVEN ORLANDO of the New York Police Department, under the supervision of defendant LT CLARENCE HOPKINS, and with the support of defendants P.O. JAMES GHERARDI, P.O. DUNN, (first name unknown), and P.O. KROLICK (first name unknown).

17)  The circumstances of the incident occurred in the early morning on March 22, 2013, when a verbal argument began between Plaintiff and another housemate, in the kitchen of the residence on 194-41 111th Road.

18)  Within a few minutes, the verbal altercation escalated when the housemate, Robyn Calhoun, struck Plaintiff in the face with a closed fist.

19)  Plaintiff defended herself by throwing one punch back at Ms. Calhoun.

20)  Immediately thereafter, four or five other residents of the house entered the kitchen and, acting in concert, assaulted the Plaintiff. The other perpetrators included Richard Lee, Rosie Reese, Sharon Williams, and Robyn Calhoun. The perpetrators punched and kicked Plaintiff in the head and body and hit her in the head with a hard object, which caused serious injury that required medical attention.

21) The perpetrators who attacked Plaintiff were the complaining witnesses who the defendants relied upon in making a purported finding of probable cause to arrest the Plaintiff. These attackers will hereinafter be referred to as "the complaining witnesses."

22) Upon information and belief, the hard object that was used to strike the Plaintiff was a .38 caliber revolver that was later recovered by police officers.

23) At some point during the assault, a bullet was fired by one of the attackers, which went through a wall or piece of molding and was later found to have landed in the kitchen sink.

24) Within a few minutes of the gun being fired, police arrived on the scene responding to a radio run about the gunshot. The officers that arrived were defendants P.O. ORLANDO, P.O. GHERARDI, P.O. DUNN, and P.O. KROLICK. They arrived simultaneously in two police vehicles.

**The Investigation Preceding the Arrest of Plaintiff**

25) Initially, all four defendant officers entered the building. Shortly after entering the building, defendants P.O. GHERARDI and P.O. DUNN followed the instructions of Tracy Corington, who said that she had placed a gun outside in the backyard.

26) Ms. Corington pointed out where she had placed a .38 caliber revolver. P.O. GHERARDI took the weapon as evidence. He did not reenter the residence.

27) P.O. ORLANDO and P.O. KROLICK remained in the residence to question the individuals present.

28) Plaintiff told the officers that she had been attacked by the complaining witnesses.

29) In P.O. ORLANDO's own words, he asked the complaining witnesses "collectively" to tell him what happened.

30) P.O. ORLANDO alleged that he listened to each complaining witness answer separately and that they told him "the same thing." All of the complaining witnesses were present in the small kitchen during questioning and were able to hear the answers that were given by one another.

31) Although the complaining witnesses were allowed to coordinate their stories, Plaintiff alleges that they did not specifically accuse her of possessing or firing a weapon.

32) P.O. ORLANDO alleged at a later hearing that he was told by Richard Lee that he had wrestled a gun away from the Plaintiff.

33) P.O. ORLANDO did not specify at the Grand Jury whether any specific person had accused the Plaintiff of possessing or firing a weapon.

34) P.O. ORLANDO did not specifically claim during questioning that anybody other than Richard Lee had told him that they had seen Plaintiff with a gun.

35) When P.O. ORLANDO received word from P.O. GHERARDI that a gun had been found in the backyard, P.O. ORLANDO immediately arrested the Plaintiff. Plaintiff was transported to the 113th Precinct.

36) Prior to being transported to the police precinct, Plaintiff requested that the police retrieve her keys from her room and lock her door.

37) P.O. ORLANDO alleged that he discovered pistol ammunition in a plastic bag in Plaintiff's room while he was looking for her keys.

38) Neither the defendant responding officers nor any other employee of the NYPD obtained written statements from the complaining witnesses.

39) Insofar as the complaining witnesses made accusations against the Plaintiff, those accusations were unspecific, incomplete, incredible, and improperly recorded by the responding officers.

**The Plaintiff's Injuries**

40) About one hour and a half elapsed between the time that the defendant officers arrived at the residence and the time that the Plaintiff was arrested. During this entire period of time, the Plaintiff was bleeding profusely from a wound on her head.

41) Plaintiff requested first aid and medical attention numerous times while the defendant police officers were in the house.

42) Defendant P.O. ORLANDO falsely claimed that he did not notice any injury to the Plaintiff until they arrived at the police precinct. P.O. ORLANDO's claim is not plausible due to the extent of Plaintiff's injuries, which required medical attention at a hospital.

43) Under the NYPD's own policies, the Plaintiff's injuries were evidence that a more thorough investigation was warranted.

44) Plaintiff's injuries should also have been taken into consideration as evidence that her claim of being attacked was more credible than the complaining witnesses' accounts.

**Plaintiff's Arraignment and Court Proceedings**

45) On March 23, 2016, Plaintiff was arraigned on a felony complaint, was committed to custody and the case was adjourned for Grand Jury action to March 27, 2013. On March 27, 2013, the Plaintiff was indicted and on April 5, 2013, the indictment was filed.

46) Plaintiff was charged with two counts of Criminal Possession of a Weapon in the Second Degree (PL §§265.03[1][b] and [3]), Criminal Possession of a Weapon in the Third Degree (PL § 265.02[1]), Reckless Endangerment in the First Degree (PL § 120.25), and Unlawful Possession of Pistol Ammunition (AC § 10-131[1][3]).

47) Due to the defendants' false accusations, falsified evidence, failure to investigate, failure to discover and turn over exculpatory evidence, abuse of process, and malicious prosecution of the Plaintiff, bond was set at $15,000.

48) Plaintiff was unable to pay the bond, and her family was unable to provide the necessary collateral to have her released through a bail bondsman.

49) As a result, Plaintiff was forced to remain incarcerated from the time of her arrest on March 22, 2013 until the charges against her were ultimately dismissed on September 18, 2014.

50) Thus, Plaintiff spent approximately one and a half years in the defendants' custody.

51) As a result of this incident, Plaintiff suffered from extreme protracted physical discomfort as a result of her untreated injury.

52) Plaintiff also suffered lasting psychological damage requiring extensive treatment, the full extent of which is not yet known at this time.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

53) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

54) Defendants, under color of state law subjected the plaintiff to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving plaintiff of her rights, privileges and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

55) Defendants conducted an unreasonable seizure of the Plaintiff's person.

56) Defendants arrested Plaintiff without probable cause.

57) Defendants lodged false charges against the Plaintiff.

58) Defendants initiated and continued a malicious prosecution of the Plaintiff, without probable cause, that was instituted with malice, and that ultimately terminated in Plaintiff's favor.

59) Defendants subjected Plaintiff to abuse of process.

60) Defendants deprived Plaintiff of liberty without due process of law.

61) Defendants violated the Plaintiff's right to equal protection, privileges and immunities under the laws.

62) Defendants failed to provide the Plaintiff with timely medical assistance.

## SECOND CLAIM
## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

63) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

64) By failing to remedy the wrongs committed by his or her subordinates, and in failing to properly train, screen, supervise, or discipline his or her subordinates, supervisory officer LIEUTENANT ("LT.") CLARENCE HOPKINS, Shield no. unknown, caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, and Fourteenth Amendments.

65) As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM
## FAILURE TO INTERVENE
## FOURTH AMENDMENT AND 42 U.S.C. § 1983

66) Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

67) Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where

they observe another member of the Police Department or other law enforcement agency falsely arresting a civilian.

68) Defendants P.O. GHERARDI, P.O. DUNN, P.O. KROLICK, and LT CLARENCE HOPKINS were present and/or aware of P.O. ORLANDO's arrest of Plaintiff without probable cause.

69) It was clear that the investigation by P.O. ORLANDO was insufficient to determine, under the totality of circumstances, that there was probable cause to arrest Plaintiff. Defendants P.O. GHERARDI, P.O. DUNN, P.O. KROLICK, and LT CLARENCE HOPKINS were aware that the purported evidence relied upon by P.O. ORLANDO was unreliable, insufficient, and contradictory. However, they failed to take any action or make any effort to intervene, halt, or protect Plaintiff from being arrested without probable cause.

70) Defendants P.O. GHERARDI, P.O. DUNN, P.O. KROLICK, and LT CLARENCE HOPKINS's violation of Plaintiff's constitutional rights by failing to intervene in P.O. ORLANDO's clearly unconstitutional arrest resulted in the injuries and damages set forth above.

### FOURTH CLAIM
### MONELL CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983

71) Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72) All of the acts and omissions by the named and unnamed individual police officer defendants described above were carried out pursuant to overlapping policies and

practices of the CITY OF NEW YORK which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

73) Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

74) The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

75) The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

   a. Arresting persons known to be innocent in order to meet "productivity goals" (*i.e.*, arrest quotas).
   b. Falsely swearing out criminal complaints, and/or lying and committing perjury during sworn testimony
      i. in order to protect other officers; and/or
      ii. in order to meet said productivity goals;
   c. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;
   d. Failure to turn over exculpatory evidence or to investigate sufficiently to uncover same;

    e.  Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

    f.   Retaliating against officers who report police misconduct; and

    g.  Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

76) Defendant CITY knew or should have known that the acts alleged herein would deprive the plaintiff of her rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

77) Defendant CITY is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

78) Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including Commissioner BRATTON and former Commissioner KELLY, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

79) The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to arrest Plaintiff without probable cause, fabricate and swear to false and/or incomplete evidence, withhold exculpatory evidence, and conduct an insufficient investigation into the true facts of the case.

80) Plaintiff's injuries were a direct and proximate result of the Defendant CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the Defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

81) Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

## FIFTH CLAIM
### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

82) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83) The conduct of defendant PO STEVEN ORLANDO alleged herein, occurred while he was on duty and in uniform, and in and during the course and scope of his duties and functions as A New York City POLICE OFFICER, and/or while he was acting as an agent and employee of defendant THE CITY OF NEW YORK, clothed with and/or

invoking state power and/or authority, and, as a result, defendant THE CITY OF NEW YORK is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

84) As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM
## FALSE ARREST AND FALSE IMPRISONMENT

85) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86) By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

87) As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM
## ABUSE OF PROCESS

88) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89) By the conduct and actions described above, defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm the plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to the plaintiff, which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

90) As a result of the foregoing, the plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

91) The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92) By the actions described above, defendants engaged in negligent conduct, which caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory

and common law rights as guaranteed by the laws and Constitution of the State of New York.

93) As a result of the foregoing, the plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM
## VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

94) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95) By the actions described above, defendants violated the plaintiff's right to equal protection of law. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

## TENTH CLAIM
## NEGLIGENCE

96) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97) The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

98) As a result of the foregoing, the plaintiff was deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### ELEVENTH CLAIM
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING

99) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

100) Defendant THE CITY OF NEW YORK negligently hired, screened, retained, supervised, and trained defendants. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

101) As a result of the foregoing, the plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, Plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That she be compensated for violation of her constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That she be awarded punitive damages against the individual defendants; and

c. That she be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other relief as the Court may deem just and proper.

Dated: Brooklyn, New York
March 22, 2016

Respectfully submitted by,

/Guido Moreira GM5527/___

Guido Moreira
Law Office of Guido Moreira
Attorney for the Plaintiff
6804 Bliss Terrace, Basement Suite
Brooklyn, NY 11220
Tel: (646) 339-8928
E: GuidoMoreiraEsq@gmail.com