UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ALTAMESE DANIEL,                                    **1:16-cv-01418-PKC-RML**


                                    Plaintiff,      **FIRST AMENDED COMPLAINT**


          -v-                                       **JURY TRIAL**
                                                    **DEMANDED**
THE CITY OF NEW YORK; New York City
Police Department Officer ("P.O.") STEVEN
ORLANDO, Shield No. 27320; LT. CLARENCE
HOPKINS, Shield No. Unknown, in their individual
and official capacities; and DERRICK HAMILTON


                                    Defendants.

----------------------------------------------------------x


## PRELIMINARY STATEMENT

1)     This is a civil rights action brought to vindicate the Plaintiff ALTAMESE DANIEL

       ("Ms. Daniel" or "Plaintiff") rights under the First, Fourth, and Fourteenth Amendments

       of the Constitution of the United States, through the Civil Rights Act of 1871, as

       amended, codified as 42 U.S.C. § 1983.


2)     Plaintiff ALTAMESE DANIEL's rights were violated when officers of the NEW YORK

       CITY POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal

       basis seized, detained, arrested and used gratuitous, unlawful force against the

       Plaintiff.  By reason of defendants' actions, including their unreasonable and unlawful

       conduct, unreasonable search, protracted seizure, failure to sufficiently investigate and

       turn over exculpatory evidence, arrest without probable cause, abuse of process,

1

malicious prosecution, and deliberate indifference to Plaintiff's medical needs, Plaintiff was deprived of her constitutional rights.

3)      Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

4)      Defendant DERRICK HAMILTON is included in this lawsuit because he defrauded the Plaintiff while she was detained awaiting trial on the charges wrongfully brought by THE CITY OF NEW YORK and the police officer defendants. Through use of the mail and wire systems, Defendant DERRICK HAMILTON represented that he would facilitate Plaintiff's release pending trial in exchange for money. When provided with said money, Defendant DERRICK HAMILTON absconded with it and neither facilitated Plaintiff's release as promised, nor returned the money, thus preventing Plaintiff from using that money to secure her release pending trial.

5)      Thus Defendant DERRICK HAMILTON shares joint and/or several liability with Defendants THE CITY OF NEW YORK and the police officer defendants with regards to a portion of the damages suffered by the Plaintiff.

## JURISDICTION AND VENUE

6)      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (3-4).

7)      Regarding Defendants, THE CITY OF NEW YORK, and the police officer defendants, this action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

2

8)      Regarding Defendant, DERRICK HAMILTON, this action is brought pursuant to 18 U.S.
Code § 1341 and 18 U.S. Code § 1343 for wire and mail fraud and pursuant to the
Court's supplemental jurisdiction under 28 U.S. Code § 1367 and pursuant to the Court's
diversity jurisdiction.

9)      Venue is proper pursuant to 28 U.S.C. § 1391 in that Plaintiff's claim arose in the Eastern
District of New York.

10)     An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988 with
regards to the civil rights claims herein.

## JURY DEMAND

11)     Plaintiff respectfully demands a trial by jury in this action on each claim of damage.

## PARTIES

12)     Plaintiff ALTAMESE DANIEL, is and was at all times relevant to this action, a resident
of the County of Queens in the State of New York.

13)     Defendant, THE CITY OF NEW YORK, is a municipal entity created and authorized
under the laws of the State of New York.  It is authorized by law to maintain a police
department which acts as its agent in the area of law enforcement and for which it is
ultimately responsible.  The Defendant assumes the risks incidental to the maintenance of
a police force and the employment of police officers as said risks attach to the public
consumers of the services provided by NYPD.

14)     Defendants New York City Police Department Officer ("P.O.") STEVEN ORLANDO,
Shield No. 27320 and Lieutenant ("LT.") CLARENCE HOPKINS, Shield No. Unknown,

3

were at all times relevant herein, officers, employees and agents of the NYPD.  The
individual defendants are being sued herein in their individual and official capacities.

15)   At all times relevant herein, the individual police officer defendants were acting under
color of state law in the course and scope of their duties and functions as agents, servants,
employees and officers of NYPD, and otherwise performed and engaged in conduct
incidental to the performance of their lawful functions in the course of their duties. They
were acting for and on behalf of the NYPD at all times relevant herein, with the power
and authority vested in them as officers, agents and employees of the NYPD and
incidental to the lawful pursuit of their duties as officers, employees and agents of the
NYPD.

16)   Police officer defendants' acts hereafter complained of were carried out intentionally,
recklessly, with malice and gross disregard for Plaintiff's rights and with deliberate
indifference toward Plaintiff's serious medical needs.

17)   At all relevant times, the police officer defendants were engaged in a joint venture,
assisting each other in performing the various actions described herein and lending their
physical presence and support and the authority of their offices to one another.

18)   Defendant DERRICK HAMILTON is an individual who purports to provide paralegal
services as well as bail bondsman and/or bail consulting services. At the time of the
incidents complained of herein, Defendant DERRICK HAMILTON was doing business
under the company name, "THE ONLY OTHER OPTION LEFT," which purported to be
a paralegal services company. His current home and business addresses are unknown and
being investigated.

4

## STATEMENT OF FACTS

**The Initial Incident**

19)     The events described herein occurred principally in the St. Albans neighborhood of Queens, on the morning of March 22, 2013.

20)     On that morning, Plaintiff ALTAMESE DANIEL, was at her place of residence, on 194-41 111th Road, where she lived with several roommates.

21)     At or about five o'clock AM on the morning of March 22, 2013, Plaintiff was wrongfully arrested by defendant P.O. STEVEN ORLANDO of the New York Police Department, under the supervision of defendant LT CLARENCE HOPKINS, and with the support of non-defendant police officers JAMES GHERARDI, DUNN, (first name unknown), and KROLICK (first name unknown).

22)     The circumstances of the incident occurred in the early morning on March 22, 2013, when a verbal argument began between Ms. Daniel and a housemate in the kitchen of the residence on 194-41 111th Road.

23)     Within a few minutes, the verbal altercation escalated when the housemate, Robyn Calhoun, struck Ms. Daniel in the face with a closed fist.

24)     Ms. Daniel defended herself by throwing one punch back at Ms. Calhoun.

25)     Immediately thereafter, four or five other residents of the house entered the kitchen and, acting in concert, assaulted Ms. Daniel. The perpetrators included Richard Lee, Rosie Reese, Sharon Williams, and Robyn Calhoun. The perpetrators punched and kicked Ms.

Daniel in the head and body and hit her in the head with a hard object, which caused serious injury that required medical attention.

26)   The perpetrators who attacked Ms. Daniel were the complaining witnesses who the defendants relied upon in making a purported finding of probable cause to arrest Ms. Daniel. These attackers will hereinafter be referred to as "the complaining witnesses."

27)   Upon information and belief, the hard object that was used to strike Ms. Daniel was a .38 caliber revolver that was later recovered by police officers.

28)   At some point during the assault, a bullet was fired by one of the attackers, which went through a wall or piece of molding and was later found to have landed in the kitchen sink.

29)   Within a few minutes of the gun being fired, police arrived on the scene responding to a radio run about the gunshot. The officers that arrived were defendant P.O. ORLANDO and non-defendants P.O. GHERARDI, P.O. DUNN, and P.O. KROLICK. They arrived simultaneously in two police vehicles.

**The Investigation Preceding the Arrest of Plaintiff**

30)   Initially, all four officers entered the building. Shortly after entering the building, P.O. GHERARDI and P.O. DUNN followed the instructions of Tracy Corington, who said that she had placed a gun outside in the backyard.

31)   Ms. Corington pointed out where she had placed a .38 caliber revolver. P.O. GHERARDI took the weapon as evidence. He did not reenter the residence.

6

32)   P.O. ORLANDO and P.O. KROLICK remained in the residence to question the individuals present.

33)   Ms. Daniel told the officers that she had been attacked by the complaining witnesses.

34)   In P.O. ORLANDO's own words, he asked the complaining witnesses "collectively" to tell him what happened.

35)   P.O. ORLANDO alleged that he listened to each complaining witness answer separately and that they told him "the same thing." All of the complaining witnesses were present in the small kitchen during questioning and were able to hear the answers that were given by one another.

36)   Although the complaining witnesses were allowed to coordinate their stories, Ms. Daniel alleges that they did not specifically accuse her of possessing or firing a weapon.

37)   P.O. ORLANDO alleged at a later hearing that he was told by Richard Lee that he had wrestled a gun away from Ms. Daniel.

38)   P.O. ORLANDO did not specify at the Grand Jury whether any specific person had accused Ms. Daniel of possessing or firing a weapon.

39)   P.O. ORLANDO did not specifically claim during questioning that anybody other than Richard Lee had told him that they had seen Ms. Daniel with a gun.

40)   When P.O. ORLANDO received word from P.O. GHERARDI that a gun had been found in the backyard, P.O. ORLANDO immediately arrested Ms. Daniel. Ms. Daniel was transported to the 113th Precinct.

41)     Prior to being transported to the police precinct, Ms. Daniel requested that the police retrieve her keys from her room and lock her door.

42)     P.O. ORLANDO alleged that he discovered pistol ammunition in a plastic bag in Ms. Daniel's room while he was looking for her keys.

43)     Neither the responding officers nor any other employee of the NYPD obtained written statements from the complaining witnesses.

44)     Insofar as the complaining witnesses made accusations against Ms. Daniel, those accusations were unspecific, incomplete, incredible, and improperly recorded by the responding officers.

**The Plaintiff's Injuries**

45)     About one hour and a half elapsed between the time that the defendant officers arrived at the residence and the time that Ms. Daniel was arrested. During this entire period of time, Ms. Daniel was bleeding profusely from a wound on her head.

46)     Ms. Daniel requested first aid and medical attention numerous times while the police officers were in the house.

47)     Defendant P.O. ORLANDO falsely claimed that he did not notice any injury to Ms. Daniel until they arrived at the police precinct. P.O. ORLANDO's claim is not plausible due to the extent of Ms. Daniel's injuries, which required medical attention at a hospital.

48)     Under the NYPD's own policies, Ms. Daniel's injuries were evidence that a more thorough investigation was warranted.

49)     Ms. Daniel's injuries should also have been taken into consideration as evidence that her claim of being attacked was more credible than the complaining witnesses' accounts.

**Plaintiff's Arraignment and Court Proceedings**

50)     On March 23, 2016, Ms. Daniel was arraigned on a felony complaint, was committed to custody and the case was adjourned for Grand Jury action to March 27, 2013. On March 27, 2013, Ms. Daniel was indicted and on April 5, 2013, the indictment was filed.

51)     Plaintiff was charged with two counts of Criminal Possession of a Weapon in the Second Degree (PL §§265.03[1][b] and [3]), Criminal Possession of a Weapon in the Third Degree (PL § 265.02[1]), Reckless Endangerment in the First Degree (PL § 120.25), and Unlawful Possession of Pistol Ammunition (AC § 10-131[1][3]).

52)     Due to the defendant police officer's false accusations, falsified evidence, failure to investigate, failure to discover and turn over exculpatory evidence, abuse of process, and malicious prosecution of Ms. Daniel, bond was set at $15,000.

53)     Ms. Daniel was unable to pay the bond, and her family was unable to provide the necessary collateral to have her released through a reputable bail bondsman.

54)     As a result, Ms. Daniel was forced to remain incarcerated from the time of her arrest on March 22, 2013 until the charges against her were ultimately dismissed on September 18, 2014.

55)     Thus, Ms. Daniel spent approximately one and a half years in the defendants' custody.

56) As a result of this incident, Ms. Daniel suffered from extreme protracted physical discomfort as a result of her untreated injury.

57) Ms. Daniel also suffered lasting psychological damage requiring extensive treatment, the full extent of which is not yet known at this time.

**The Fraud Scheme Carried out by DERRICK HAMILTON**

58) As Ms. Daniel was unable to pay the unreasonably high bond and unable to provide collateral as required by reputable bail bondsmen, Ms. Daniel became desperate and began looking for other ways to pay her bond and secure her release pending trial.

59) While Ms. Daniel was detained at Rikers Island, a fellow inmate told Ms. Daniel that Defendant DERRICK HAMILTON could assist Ms. Daniel and effectuate her release from pre-trial detention.

60) Upon information and belief, the inmate who referred Ms. Daniel to Defendant DERRICK HAMILTON was, at the time, an employee, agent, contractor, or otherwise doing business with the Defendant. The source of this information is that Ms. Daniel alleges that the inmate informed Ms. Daniel that she worked for the Defendant and was also a good friend of the Defendant. As such, the referring inmate will hereinafter be referred to as "the employee."

61) The true identity of the employee is unknown at this time. Ms. Daniel became acquainted with the employee while they both worked in sanitation while inmates at Rikers Island.

62)   In or around June of 2013, Defendant DERRICK HAMILTON and Ms. Daniel began corresponding, primarily by telephone, as well as by mail.

63)   Defendant DERRICK HAMILTON represented himself as either a bail bondsman, or as an agent authorized to make dealings and decisions on behalf of a bail bondsman. At no time did Ms. Daniel communicate with any partner, associate, employer, etc. of the Defendant with the exception of the employee who referred her while at Rikers Island.

64)   Defendant DERRICK HAMILTON told Ms. Daniel that he could effectuate her release from pre-trial detention if he paid her three thousand dollars ($3,000).

65)   Ms. Daniel told Defendant that she only had two thousand five hundred dollars ($2,500), which she had received from the City of New York for being a class member of a class action lawsuit ("NYC Loitering Settlement").

66)   Defendant DERRICK HAMILTON told Ms. Daniel that if she paid him the $2,500, he would effectuate her release and she would owe him the remaining five hundred dollars ($500).

67)   The NYC Loitering Settlement was in the care of Ms. Daniel's partner, Stephen Wonge, at his home. The check required Ms. Daniel's signature

68)   Defendant DERRICK HAMILTON told Ms. Daniel that he would send an employee to pick up the check to bring to Defendant. Once Defendant was in possession of the check, he claimed that he would bring it to Ms. Daniel. Defendant claimed that he would effectuate Ms. Daniel's release, and at that time, she would sign the check and allow Defendant to receive the money.

11

69)  In or around June of 2013, the employee who originally referred Ms. Daniel arrived at the
home of Stephen Wonge. The employee put Mr. Wonge on the phone with Defendant
DERRICK HAMILTON. Defendant confirmed the arrangement referred to in paragraph
68 and asked Mr. Wonge to give the employee the NYC Loitering Settlement check. Mr.
Wonge complied and the employee took the check to give to Defendant.

70)  Defendant DERRICK HAMILTON did not follow through with his promise to effectuate
the release of Ms. Daniel from pre-trial detention.

71)  Defendant DERRICK HAMILTON forged Ms. Daniel's signature on the NYC Loitering
Settlement check and obtained a sum of two thousand five hundred and twenty-one
dollars and ninety-nine cents ($2,521.99).

72)  Defendant DERRICK HAMILTON told Ms. Daniel that there was no way that he could
get her out of pre-trial detention unless she provided him with additional payment.

73)  Ms. Daniel and Stephen Wonge both repeatedly called Defendant DERRICK
HAMILTON and requested that he return the money. Defendant responded that he would
hold the money and that Ms. Daniel could come and get it personally when she gets out
of jail.

74)  Ms. Daniel had no further contact with Defendant DERRICK HAMILTON since
approximately late 2013.

**FIRST CLAIM**
**(Against THE CITY OF NEW YORK, PO STEVEN ORLANDO, and LT CLARENCE**
**HOPKINS)**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

75) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76) Defendants, under color of state law subjected the plaintiff to the foregoing acts and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving plaintiff of her rights, privileges and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

77) Defendants conducted an unreasonable seizure of Plaintiff's person.

78) Defendants arrested Plaintiff without probable cause.

79) Defendants lodged false charges against the Plaintiff.

80) Defendants initiated and continued a malicious prosecution of Plaintiff, without probable cause, that was instituted with malice, and that ultimately terminated in Plaintiff's favor.

81) Defendants subjected Plaintiff to abuse of process.

82) Defendants conspired to prevent exculpatory evidence from coming to light.

83) Defendants deprived Plaintiff of liberty without due process of law.

84) Defendants violated Plaintiff's right to equal protection, privileges and immunities under the laws.

13

85)     Defendants were deliberately indifferent when they failed to provide Plaintiff with timely

medical assistance.


**SECOND CLAIM**
**(Against LT CLARENCE HOPKINS)**
**SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**

86)     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as

if fully set forth herein.

87)     By failing to remedy the wrongs committed by his or her subordinates, and in failing to

properly train, screen, supervise, or discipline his or her subordinates, supervisory officer

LIEUTENANT ("LT.") CLARENCE HOPKINS, Shield no. unknown, caused damage

and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the

United States Constitution, including its First, Fourth, and Fourteenth Amendments.

88)     As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and

serious bodily injury, pain and suffering, psychological and emotional injury, costs and

expenses, and was otherwise damaged and injured.


**THIRD CLAIM**
**(Against LT CLARENCE HOPKINS)**
**FAILURE TO INTERVENE**
**FOURTH AMENDMENT AND 42 U.S.C. § 1983**

89)     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs as

if fully set forth herein.

90)     Members of the NYPD have an affirmative duty to assess the constitutionality of

interactions between their fellow members of service and civilians and to intervene where

14

they observe another member of the Police Department or other law enforcement agency falsely arresting a civilian.

91)     Defendant LT CLARENCE HOPKINS was present and/or aware of P.O. ORLANDO's arrest of Plaintiff without probable cause and did not intervene to prevent the unconstitutional arrest.

92)     It was clear that the investigation by P.O. ORLANDO was insufficient to determine, under the totality of circumstances, that there was probable cause to arrest Plaintiff. Defendant LT CLARENCE HOPKINS was aware that the purported evidence relied upon by P.O. ORLANDO was unreliable, insufficient, and contradictory. However, he failed to take any action or make any effort to intervene, halt, or protect Plaintiff from being arrested without probable cause.

93)     Defendant LT CLARENCE HOPKINS's violation of Plaintiff's constitutional rights by failing to intervene in P.O. ORLANDO's clearly unconstitutional arrest resulted in the injuries and damages set forth above.

**FOURTH CLAIM**
**(Against THE CITY OF NEW YORK)**
**MONELL CLAIM– 42 U.S.C. § 1983**

94)     Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

95)     All of the acts and omissions by the individual police officer defendants described above were carried out pursuant to overlapping policies and practices of the CITY OF NEW YORK which were in existence at the time of the conduct alleged herein and were

engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

96)     Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

97)     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

98)     The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

   a.   Arresting persons known to be innocent in order to meet "productivity goals" (*i.e.*, arrest quotas).

   b.   Falsely swearing out criminal complaints, and/or lying and committing perjury during sworn testimony

        i.   in order to protect other officers; and/or

        ii.  in order to meet said productivity goals;

   c.   Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

   d.   Failure to turn over exculpatory evidence or to investigate sufficiently to uncover same;

   e.   Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

   f.    Retaliating against officers who report police misconduct; and

g. Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

99) Defendant CITY knew or should have known that the acts alleged herein would deprive Plaintiff of her rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

100) Defendant CITY is directly liable and responsible for the acts of the individual police officer defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

101) Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including Commissioner BRATTON and former Commissioner KELLY, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

102) The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by

17

the police misconduct detailed herein.  Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to arrest Plaintiff without probable cause, fabricate and swear to false and/or incomplete evidence, withhold exculpatory evidence, and conduct an insufficient investigation into the true facts of the case.

103)   Plaintiff's injuries were a direct and proximate result of the Defendant CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the Defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

104)   Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

**FIFTH CLAIM**
**(Against THE CITY OF NEW YORK)**
**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK**
**FOR STATE LAW VIOLATIONS**

105)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

106)   The conduct of defendant PO STEVEN ORLANDO alleged herein, occurred while he was on duty and in uniform, and in and during the course and scope of his duties and functions as A New York City POLICE OFFICER, and/or while he was acting as an agent and employee of defendant THE CITY OF NEW YORK, clothed with and/or invoking state power and/or authority, and, as a result, defendant THE CITY OF NEW

18

YORK is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

107) As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**SIXTH CLAIM**
**(Against THE CITY OF NEW YORK, PO STEVEN ORLANDO, and LT CLARENCE HOPKINS)**
**FALSE ARREST AND FALSE IMPRISONMENT**

108) Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

109) By the actions described above, defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

110) As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**SEVENTH CLAIM**
**(Against THE CITY OF NEW YORK, PO STEVEN ORLANDO, and LT CLARENCE HOPKINS)**
**ABUSE OF PROCESS**

111)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

112)   By the conduct and actions described above, defendants employed regularly issued process against Plaintiff compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm the Plaintiff without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to Plaintiff, which was outside the legitimate ends of the process.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

113)   As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**EIGHTH CLAIM**
**(Against THE CITY OF NEW YORK, PO STEVEN ORLANDO, and LT CLARENCE HOPKINS)**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

114)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

20

115)   By the actions described above, defendants engaged in negligent conduct, which caused severe emotional distress to Plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

116)   As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM
**(Against THE CITY OF NEW YORK, PO STEVEN ORLANDO, and LT CLARENCE HOPKINS)**
**VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW**

117)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

118)   By the actions described above, defendants violated Plaintiff's right to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

## TENTH CLAIM
**(Against THE CITY OF NEW YORK, PO STEVEN ORLANDO, and LT CLARENCE HOPKINS)**
**NEGLIGENCE**

119)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

120)     The defendants, jointly and severally, negligently caused injuries, emotional distress and

damage to Plaintiff.  The acts and conduct of the defendants were the direct and

proximate cause of injury and damage to Plaintiff and violated her statutory and common

law rights as guaranteed by the laws and Constitution of the State of New York.

121)     As a result of the foregoing, Plaintiff was deprived of their liberty, suffered specific and

serious bodily injury, pain and suffering, psychological and emotional injury, costs and

expenses, and was otherwise damaged and injured.

**ELEVENTH CLAIM**
**(Against THE CITY OF NEW YORK)**
**NEGLIGENT HIRING, SCREENING, RETENTION,**
**SUPERVISION, AND TRAINING**

122)     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as

if fully set forth herein.

123)     Defendant THE CITY OF NEW YORK negligently hired, screened, retained, supervised,

and trained defendants.  The acts and conduct of the defendants were the direct and

proximate cause of injury and damage to Plaintiff and violated her statutory and common

law rights as guaranteed by the laws and Constitution of the State of New York.

124)     As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific bodily

injury, pain and suffering, psychological and emotional injury, costs and expenses, and

was otherwise damaged and injured.

**TWELFTH CLAIM**
**(Against DERRICK HAMILTON)**
**MAIL FRAUD - 18 U.S. Code § 1341**

125)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as
       if fully set forth herein.

126)   Defendant DERRICK HAMILTON devised a scheme to intentionally defraud Plaintiff,
       which in fact resulted in financial loss to Plaintiff.

127)   Defendant DERRICK HAMILTON used the mail system for the purpose of executing his
       fraudulent scheme.

128)   As a result of the fraudulent scheme, Defendant DERRICK HAMILTON stole all or most
       of the money that Plaintiff had available to her while she was in pre-trial detention at
       Rikers Island. The total sum was two thousand five hundred and twenty-one dollars and
       ninety-nine cents ($2,521.99).

129)   As a direct, proximate, foreseeable, and reasonably certain result of the theft of Plaintiff's
       money, Defendant DERRICK HAMILTON prevented Plaintiff from being able to pay
       bond and be free during the pendency of her trial.

**THIRTEENTH CLAIM**
**(Against DERRICK HAMILTON)**
**WIRE FRAUD - 18 U.S. Code § 1343**

130)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as
       if fully set forth herein.

131)   Defendant DERRICK HAMILTON devised a scheme to intentionally defraud Plaintiff,
       which in fact resulted in financial loss to Plaintiff.

132)   Defendant DERRICK HAMILTON used interstate wire communications for the purpose
of executing his fraudulent scheme.

133)   As a result of the fraudulent scheme, Defendant DERRICK HAMILTON stole all or most
of the money that Plaintiff had available to her while she was in pre-trial detention at
Rikers Island. The total sum was two thousand five hundred and twenty-one dollars and
ninety-nine cents ($2,521.99).

134)   As a direct, proximate, foreseeable, and reasonably certain result of the theft of Plaintiff's
money, Defendant DERRICK HAMILTON prevented Plaintiff from being able to pay
bond and be free during the pendency of her trial.

**FOURTEENTH CLAIM**
**(Against DERRICK HAMILTON)**
**CHECK FRAUD**

135)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as
if fully set forth herein.

136)   Defendant DERRICK HAMILTON received a check that was made out to Plaintiff, for
the purpose of bringing the check to Plaintiff so that she could sign it.

137)   Defendant DERRICK HAMILTON forged Plaintiff's signature in order to cash the
Plaintiff's check.

138)   As a result, Defendant DERRICK HAMILTON deprived Plaintiff of money and stole
such money for himself.

139)

**FIFTEENTH CLAIM**
**(Against DERRICK HAMILTON)**
**BREACH OF CONTRACT**

140)   Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as
       if fully set forth herein.

141)   Defendant DERRICK HAMILTON made an offer to Plaintiff that he would effectuate
       Plaintiff's release from pre-trial detention in exchange for money and Plaintiff accepted
       the offer.

142)   Defendant DERRICK HAMILTON instructed Plaintiff on how to go about completing
       her end of the agreement and Plaintiff followed his instructions.

143)   Defendant DERRICK HAMILTON took money from the Plaintiff.

144)   Defendant DERRICK HAMILTON thereafter refused to effectuate Plaintiff's release
       from pre-trial detention and refused further to return Plaintiff's money.

145)   As a result of the breach of contract, Plaintiff lost money.

146)   As a result of the loss of money, Plaintiff lost any opportunity to make alternate
       arrangements to effectuate her release from pre-trial detention.

147)   Plaintiff's continued enduring incarceration was a direct, proximate and foreseeable
       result of the breach of contract by Defendant DERRICK HAMILTON.

WHEREFORE, Plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That she be compensated for violation of her constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That she be awarded punitive damages against the individual defendants; and

c. That she be compensated for attorneys' fees and the costs and disbursements of this action; and

d. That she be compensated for the damages caused by fraud and breach of contract against her; and

e. For such other relief as the Court may deem just and proper.

Dated: Brooklyn, New York
       September 16, 2016

                                        Respectfully submitted by,

                                        /Guido Moreira GM5527/___
                                        Guido Moreira
                                        Law Office of Guido Moreira
                                        Attorney for the Plaintiff
                                        6804 Bliss Terrace, Basement Suite
                                        Brooklyn, NY 11220
                                        Tel: (646) 339-8928
                                        E: GuidoMoreiraEsq@gmail.com