UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ALTAMESE DANIEL,

                 Plaintiff,

           - against -

New York City Police Department Officer
STEVEN ORLANDO and Lieutenant
CLARENCE HOPKINS, in their individual and
official capacities; and THE CITY OF NEW
YORK,

                 Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-1418 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

Plaintiff Altamese Daniel ("Plaintiff") brings this action against Defendants New York City Police Department ("NYPD") Officer Steven Orlando, NYPD Lieutenant Clarence Hopkins, and the City of New York (collectively, "Defendants"),[1] advancing several claims under 42 U.S.C. § 1983.[2] Defendants move for summary judgment on all of Plaintiff's claims. (Dkt. 33.) For the following reasons, the Court grants Defendants' motion for summary judgment.

## BACKGROUND

On March 22, 2013, at approximately 5:18 a.m., a 911 call was made to the NYPD regarding shots fired by a female at 194-41 111 Road in Queens, New York. (Defendants' 56.1

---

[1] Although Derrick Hamilton was originally identified as a defendant (Am. Compl., Dkt. 12, ¶¶ 59–74), the Court dismissed him from the case. (*See* Oct. 18, 2018 Docket Entry.)

[2] The Amended Complaint identifies various state-law claims, claims purporting to arise under the federal mail and wire fraud statutes, and an Equal Protection claim. (Am. Compl., ¶¶ 105–147.) However, Plaintiff has since clarified that she has abandoned these claims. (Dkt. 26.)

1

Statement ("Defs.' 56.1"), Dkt. 34, ¶ 1.)[3] At approximately 5:30 a.m., the NYPD responded to the call. (*Id.* ¶ 2.) Upon arriving at the scene, Defendant Orlando found a female complainant waiting outside, looking upset. (*Id.* ¶ 3.) The complainant informed Defendant Orlando that a verbal dispute had occurred inside the house, during which a firearm was discharged. (*Id.* ¶ 4.) Defendant Orlando entered the home and observed that there were approximately five individuals in the kitchen, including the female complainant who had met him outside (the "witnesses"). (*Id.* ¶ 5.) Like the female complainant, the five individuals in the home appeared upset, excited, and anxious. (*Id.* ¶ 6; Plaintiffs 56.1 Statement, Dkt. 37, ¶ 6.) While Defendant Orlando's colleagues worked to locate and secure the firearm, Defendant Orlando and his partner investigated inside the house by questioning the witnesses in the kitchen. (Defs.' 56.1, ¶ 7.) The witnesses spoke to Defendant Orlando as a group. (*Id.* ¶ 8.) They tried to tell Defendant Orlando that Plaintiff "started the problem." (*Id.* ¶ 9; Plaintiff's Deposition ("Pl.'s Dep."), Dkt. 35-4, at ECF[4] 246.) At a state-court suppression hearing, Defendant Orlando testified that he was informed that the female complainant got into an argument with Plaintiff, and that

> [Plaintiff] went into her back bedroom and came out with a firearm, discharged one round. I'm informed by Richard Lee [a witness] who is within close proximity to the gun when it was discharged that he was able to wrestle the gun from [Plaintiff] at which time he handed the gun to—reference my memo book[5]—Tracy Carrington [another witness] who stated she took the gun outside and had put it out in the

---

[3] Unless otherwise noted, a standalone citation to a party's 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

[4] "ECF" refers to the "Page ID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] The "memo book" is comprised of notes that Defendant Orlando took at the scene or shortly thereafter." (Deposition of Defendant Orlando ("Orlando Dep."), Dkt. 35-2, at ECF 205.) At deposition, Defendant Orlando testified that any notes written at the scene "would have been [] witness's names, date of births, or phone numbers." (*Id.* at ECF 190).

backyard so that nobody could have access to it while the dispute was occurring in the house.

(Transcript of State Criminal Proceedings ("Tr."), Dkt. 35-6, at ECF 280.) At deposition in the instant matter, Defendant Orlando recalled that he had told Defendant Hopkins that the events unfurled as follows:

> [T]here was a dispute inside the—verbal dispute inside the location. Verbal dispute turned into a physical—small physical fight. At which time the complainant said that [Plaintiff] went into her room a[nd] grabbed a firearm. One round was discharged from the firearm. One of the witnesses was able to wrestle the firearm from [Plaintiff]. The firearm was thrown outside and recovered. One round was found inside the sink. And . . . a black bag containing .38 caliber live rounds. .38 would be the caliber. I don't remember how many exact rounds were found. Some loose ammunition was found inside [Plaintiff's] room. And that was upon her permission to enter the room to find her keys. And that was it.

(Orlando Dep., Dkt. 35-2, at ECF 192–93). Defendant Orlando additionally testified that Plaintiff told him that she was "jumped" at the scene by the other occupants of the house, that they were fabricating the story about her and the firearm, and that she never had a gun. (*Id.* at ECF 188.) He conceded that he never separated "any of the witnesses that claimed to be victims" and that these individuals could hear each other's explanations as to what occurred. (*Id.* at ECF 189.) Defendant Orlando explained: "Once the physical evidence [the firearm] was recovered from outside, in conjunction with the consistent story that we got inside, we made the decision to arrest" Plaintiff. (*Id.*) Defendant Hopkins approved Defendant Orlando's arrest of Plaintiff. (Defs.' 56.1, at ¶ 19.)

Once Plaintiff was placed under arrest, she was transported to the 113th precinct. (*Id.* ¶ 25.) Plaintiff's arrest report included three charges: (1) Criminal Possession of a Weapon in the Second Degree; (2) Reckless Endangerment in the First Degree; and (3) Menacing with a Weapon in the Second Degree. (*Id.* ¶ 26.) On March 22, 2013, Defendant Orlando signed a criminal complaint against Plaintiff. (*Id.* ¶ 29.) Plaintiff subsequently appeared before a judge, who set bail at $15,000. (*Id.* ¶ 31.) Plaintiff could not afford to pay bail and was transported to Rikers

3

Island. (*Id.* ¶¶ 32–33.) On March 27, 2013, a grand jury indicted Plaintiff on two counts of Criminal Possession of a Weapon in the Second Degree, one count of Criminal Possession of a Weapon in the Third Degree, one count of Reckless Endangerment in the First Degree, and one count of Unlawful Possession of Pistol Ammunition. (*Id.* ¶ 34.) On September 22, 2014, Plaintiff's charges were dismissed on speedy trial grounds. (*Id.* ¶ 43.)

## DISCUSSION

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the" non-movant. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

4

When assessing whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

**I.     False Arrest**

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quotation and ellipsis omitted). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quotations omitted). Whether probable cause supported Plaintiff's arrest is therefore a critical issue with respect to Plaintiff's false arrest claim.

**A.     Collateral Estoppel**

Defendants contend that Plaintiff is collaterally estopped from arguing that the arrest at issue in this case was not supported by probable cause, because during a suppression hearing in the underlying criminal case, Judge Blumenfeld—a Justice of the Supreme Court, Queens County (Tr., Dkt. 35-6, at ECF 274)—determined that there was probable cause for Plaintiff's arrest (Defs.' Mem. of Law in Supp. Mot. for Summ. J. ("Defs.' Br."), Dkt. 36, at ECF 400, 403–408). The Court rejects this argument.

Section 1983 "provides for causes of action in both state and federal courts, but not both

5

because 28 U.S.C. § 1738 dictates that federal courts accord state court final judgments the same issue and claim preclusion they would enjoy in the state's courts." *Pappas v. Giuliani*, 118 F. Supp. 2d 433, 439 (S.D.N.Y. 2000) (citation omitted); *see Allen v. McCurry*, 449 U.S. 90, 103–04 (1980) (state court final judgments are entitled to issue preclusion in federal § 1983 actions). Collateral estoppel has two elements: (1) "the identical issue necessarily must have been decided in the prior action and be decisive of the present action," and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Jenkins*, 478 F.3d at 85 (quotation omitted). "In determining whether a party has had a full and fair opportunity to litigate, a court must be mindful of the realities of the litigation." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996).

The Court holds that collateral estoppel does not bar Plaintiff from arguing that her arrest was not supported by probable cause. Although the question of whether probable cause supported Plaintiff's arrest was necessarily decided at the state-court suppression hearing and is decisive in adjudicating Plaintiff's false arrest claim, Plaintiff did not have a full and fair opportunity to contest the probable cause determination in state court because the charges against her were ultimately dismissed. The Court finds *Taylor v. City of New York*, No. 03-CV-6477 (RLC), 2006 WL 1699606 (S.D.N.Y. June 21, 2006), persuasive on this issue. There, the court succinctly explained:

> Defendants argue that because plaintiff had a pretrial suppression hearing in which the state court found that defendants had probable cause, the doctrine of collateral estoppel now bars plaintiff from bringing § 1983 claims. This argument is meritless. Any appeal of defendant's pretrial hearing outcome would have been premature before the jury's verdict. After acquittal, defendant no longer had the opportunity or incentive to appeal the results of the hearing. He was free, he wanted to 'go home and take a nice hot bath.' Thus, it cannot be said that he had a 'full and fair' opportunity to litigate this issue.

*Id.* at *8 (citations omitted).

So too here "Plaintiff did not have an opportunity to appeal Judge [Blumenfeld]'s decision

because the charges against her were eventually dismissed." *Posner v. City of New York*, No. 11-CV-4859 (JMF), 2014 WL 185880, at *5 n.3 (S.D.N.Y. Jan. 16, 2014). Appeal of the state court's probable cause determination would have been premature before the disposition of Plaintiff's criminal charges, and Plaintiff had insufficient incentive to appeal after her charges were dismissed—especially in light of the fact that Plaintiff had languished in pretrial detention for *eighteen months* and one can reasonably presume that she wanted to move on with her life upon release. (Defs.' 56.1, ¶¶ 32–33, 43.)[6] For this reason, the Court holds that Plaintiff is not collaterally estopped from challenging the state court's probable cause determination in this Court. *See Johnson*, 101 F.3d at 795–96 ("New York courts have held that facts determined in a pretrial suppression hearing cannot be given preclusive effect against a defendant subsequently acquitted of the charges. This rule is predicated on the defendant's lack of an opportunity to obtain review of an issue decided against him."); *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 295 n.9 (S.D.N.Y. 2009) ("Plaintiff's acquittal denied him a full and fair opportunity to litigate the issue of probable cause in his criminal proceeding.").

The Court therefore addresses the probable cause issue on the merits.

**B.   Merits**

"[P]robable cause exists if a law enforcement officer received information from some

---

[6] While pretrial detention of this length may have been improper, given the ultimate dismissal of Plaintiff's criminal prosecution, any impropriety relating to the length of that detention, in itself, does not give rise to claims against the arresting officers. *See, e.g., Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007) (establishing claim of unreasonably prolonged detention, but requiring, *inter alia*, proof that the defendant-officer intentionally failed to produce readily available exculpatory evidence). To be clear, Plaintiff has never alleged an unreasonably prolonged detention claim in this case, nor would such a claim be successful, given the absence of any evidence that Defendants failed to produce or obtain any readily available exculpatory evidence as to Plaintiff. Indeed, if there was a procedural failure that resulted in Plaintiff's lengthy pretrial detention, it was one that could and should have been addressed in her underlying criminal prosecution. *See* N.Y. Crim. Proc. § 30.30 (speedy trial rules).

7

person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quotation and brackets omitted). Because Defendants have invoked the defense of qualified immunity (Defs.' Br., Dkt. 36, at ECF 417–18),[7] the Court will also address "arguable probable cause." *Cortes v. City of New York*, 148 F. Supp. 3d 248, 254 (E.D.N.Y. 2015). Arguable probable cause exists where "officers of reasonable competence could disagree on the legality of [their] action [in this] particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quotation omitted).

Discovery revealed the following. On March 22, 2013, a 911 call was made to the NYPD regarding shots fired by a female. (Defs.' 56.1, ¶ 1.) Upon arriving at the scene, Defendant Orlando found a female complainant waiting outside. (*Id.* ¶ 3.) The complainant informed Defendant Orlando that a verbal dispute had occurred inside the house, during which a firearm was discharged. (*Id.* ¶ 4.) While Defendant Orlando's colleagues worked to locate and secure the firearm, Defendant Orlando and his partner investigated inside the house by questioning the witnesses in the kitchen. (*Id.* ¶ 7.) The witnesses spoke to Defendant Orlando as a group (*id.* ¶ 8) and tried to tell Defendant Orlando that Plaintiff "started the problem" (*id.* ¶ 9; Pl.'s Dep., Dkt. 35-4, at ECF 246). At the state-court suppression hearing, Defendant Orlando testified that he was informed that the female complainant got into an argument with Plaintiff, that Plaintiff went into her bedroom, and that she came out with a firearm and discharged one round. (Tr., Dkt. 35-6, at ECF 280.) At deposition, Defendant Orlando explained that he recounted to Defendant Hopkins a version of events that was consistent with the description he gave at the state-court suppression

---

[7] A defendant is entitled to qualified immunity under federal law if "(1) the defendant's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for the defendant to believe his actions were lawful at the time of the challenged act." *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (quotation and brackets omitted).

hearing, and added that loose ammunition was found inside Plaintiff's room. (Orlando Dep., Dkt. 35-2, at ECF 192–93.) Defendant Orlando additionally testified that Plaintiff told him that she was "jumped" at the scene by the other occupants of the house, that they were fabricating the story about her and the firearm, and that she never had a gun. (*Id.* at ECF 188.) Defendant Orlando admitted that he never separated "any of the witnesses that claimed to be victims" and that these individuals could hear each other's explanations as to what occurred. (*Id.* at ECF 189.)

Based on these undisputed material facts, the Court holds that there is no genuine dispute that at least arguable probable cause supported Plaintiff's arrest. "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (quotation omitted). In elaborating on the circumstances under which police officers may rely on witness statements to justify an arrest, the Second Circuit has explained:

> The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors. A tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated is especially significant in establishing probable cause. Moreover, information provided by an identified bystander with no apparent motive to falsify has a peculiar likelihood of accuracy, and we have endorsed the proposition that an identified citizen informant is presumed to be reliable.
>
> Furthermore, the fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause. . . .
>
> We have also noted that once officers possess facts to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge, or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.

*Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006) (quotations, citations, and alterations omitted).

Applying this standard, the Court determines that, at the very least, Defendants had arguable probable cause to arrest Plaintiff. *See Shaheed v. City of New York*, 287 F. Supp. 3d 438, 449 (S.D.N.Y. 2018) (dismissing false arrest claim where "the officers had at least arguable probable cause to arrest plaintiffs"). In this case, the witnesses whose testimony inculpated Plaintiff were identified bystanders with no apparent motive to falsify. That Plaintiff denied responsibility for the discharge of the firearm did not render the witnesses' inculpatory statements so unreliable as to vitiate probable cause. *See Mazza v. City of New York*, No. 98-CV-2343 (ILG), 1999 WL 1289623, at *5 (E.D.N.Y. July 13, 1999) ("[A] police officer need not investigate all potentially exculpatory claims prior to making an arrest. To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" (citation and quotation omitted)).

Moreover, the arguable probable cause created by the witnesses' identification of Plaintiff as the perpetrator was not undermined by the fact that the witnesses appeared distressed, that the scene was chaotic, that the witnesses may have been intoxicated, that the witnesses could hear each other's statements, that the witnesses talked over each other, or that Plaintiff was injured. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 69–70 (2d Cir. 2001) (ruling that police officers had probable cause to arrest the plaintiff for assault over the plaintiff's objections that he had merely attempted to break up the fight and that the victims were drunk at the time they provided their account to the arresting officer); *Garcia v. Cty. of Westchester*, No. 11-CV-7258 (KMK), 2017 WL 6375791, at *9, *21 (S.D.N.Y. Dec. 12, 2017) (granting summary judgment to defendant-officer on false arrest claim based on probable cause even where "the scene [of arrest] was chaotic and many individuals were screaming, crying, and running around"); *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 171–72 (E.D.N.Y. 2010) (holding that there were "no triable issues of fact

as to whether" defendant-officer had arguable probable cause where "multiple witnesses told [him] that, based on hearing the 911 tape, they believed with varying degrees of certainty that plaintiff was the person who made the bomb threat").[8]

Accordingly, the Court grants summary judgment to Defendants on Plaintiff's false arrest claim.

## II. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of [her] rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). To state a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161 (quotations omitted).

Having determined, *supra*, that there was at least arguable probable cause to support Plaintiff's arrest, the Court holds that Plaintiff's malicious prosecution claim fails because Plaintiff has not identified any evidence discovered between arrest and prosecution that would have vitiated

---

[8] The Court notes that, because Defendants have invoked qualified immunity, the burden was on Plaintiff to demonstrate that "in the light of pre-existing law[,] the unlawfulness" of Defendants' conduct was apparent. *Black v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 129 (2d Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Plaintiff has not identified any caselaw establishing that, at the time of Plaintiff's arrest on March 22, 2013, it was "clearly established" that the specific circumstances under which Defendants arrested Plaintiff evinced a lack of probable cause. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("Under our cases, the clearly established right must be defined with specificity. This Court has repeatedly told courts not to define clearly established law at a high level of generality." (quotation, ellipsis, and brackets omitted)).

11

probable cause. *See McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014) ("[A]n officer is entitled to qualified immunity against a claim of malicious prosecution if the officer had arguable probable cause to arrest the plaintiff." (citing *Betts*, 751 F.3d at 83)). "The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, except that a claim for malicious prosecution must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest." *Danielak v. City of New York*, No. 02-CV-2349 (KAM), 2005 WL 2347095, at *10 (E.D.N.Y. Sept. 26, 2005) (quotation, citations, and brackets omitted). "Once probable cause to arrest has been established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, 'the groundless nature of the charges [is] made apparent by the discovery of some intervening fact.'" *Walston v. City of New York*, 289 F. Supp. 3d 398, 407 (E.D.N.Y. 2018) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).

Plaintiff has failed to identify the existence of any fact that came to light after her arrest that would have vitiated the probable cause required to legally sustain Plaintiff's prosecution. Plaintiff's malicious prosecution claim therefore fails. *See Brown v. City of New York*, No. 12-CV-3146 (LTS) (GWG), 2014 WL 5089748, at *8 (S.D.N.Y. Sept. 30, 2014) (granting summary judgment to the defendants on malicious prosecution claim where probable cause existed at the time of the plaintiff's arrest and "no new facts came to light after [p]laintiff's arrest").[9] Accordingly, the Court grants summary judgment to Defendants as to Plaintiff's malicious

---

[9] Even if Plaintiff had demonstrated that probable cause did not support her prosecution, her malicious prosecution claim would nevertheless fail because she has not demonstrated that Defendants acted with actual malice. *See Fulton v. Robinson*, 289 F.3d 188, 198 (2d Cir. 2002) (affirming summary judgment in favor of the defendant-officers where the plaintiff "could not show that the criminal prosecution was commenced or continued against him with malice, *i.e.*, with a wrong or improper motive, something other than a desire to see the ends of justice served" (quotations omitted)).

prosecution claim.

## III. Right to Fair Trial

To prevail on a right-to-fair-trial claim brought under § 1983, a plaintiff must demonstrate that "an (1) investigating official (2) fabricate[d] evidence (3) that [was] likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)); *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.").

The Court grants Defendants' motion for summary judgment on Plaintiff's right-to-fair-trial claim. Plaintiff argues that

> Defendant Orlando violated [Plaintiff]'s right to a fair trial and essentially created false information by failing to note in the complaint that [Plaintiff] had suffered substantial injuries prior to their arrival. Defendant Orlando also failed to note that the putative complaining witnesses were intoxicated. Defendant Orlando also mischaracterized the ambiguous and unreliable statements of the hysterical, intoxicated putative complaining witnesses to make them appear to be a basis for prosecution.

(Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J., Dkt. 39, at ECF 479–80.) That Plaintiff was injured at the time of her arrest is not exculpatory evidence. Indeed, evidence in the record indicates that the witnesses hit Plaintiff in the back of the head with a ceramic bowl in order to dispossess her of the gun after she discharged the firearm, and that Defendants, in fact, disclosed this information in their arrest reports, even if it was not contained in the criminal complaint. (Defs.' Exhibit I Arrest Report, Dkt. 35-9, at ECF 344.) Moreover, that the witnesses were

13

intoxicated, hysterical, and gave "ambiguous" statements does not constitute exculpatory evidence sufficient to sustain a right-to-fair-trial claim. *See Lewis v. Brown*, No. 15-CV-5084 (NRB), 2017 WL 1091986, at *6 (S.D.N.Y. Mar. 15, 2017) (to prevail on a right-to-fair-trial claim, the investigating official had to forward information that is "both false and likely to influence a jury's decision"); *Soto v. City of New York*, 132 F. Supp. 3d 424, 458 (E.D.N.Y. 2015) (granting defendants' motion for summary judgment as to plaintiff's denial of fair trial claim where the allegedly fabricated evidence was "essentially a quibble over terminology" and was "not a genuine issue of material fact").

## IV. *Monell*

Plaintiff advances a *Monell* claim. (Am. Compl., ¶¶ 94–104.) As the Second Circuit has explained,

> [a] municipality may be liable under § 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. In other words, municipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions. In short, to establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury.

*Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quotations and citations omitted).

As the Court has held, *supra*, Plaintiff has failed to present evidence sufficient to allow a trier of fact to reasonably find that she suffered a constitutional violation. Because the Court has granted summary judgment to Defendants on Plaintiff's false arrest, malicious prosecution, and right-to-fair-trial claims, it must grant summary judgment to Defendants on Plaintiff's *Monell* claim as well. *See Sanders v. City of Rochester*, 360 F. Supp. 3d 152, 168 (W.D.N.Y. 2019) ("As the above-analysis makes clear, [plaintiff] has failed to establish a predicate constitutional violation sufficient to sustain a *Monell* claim against defendants. For this reason alone, summary

judgment in favor of the defendants on [plaintiff's] municipal liability claims is appropriate." (quotation, brackets, and citation omitted)); *Leon v. City of New York*, No. 09-CV-8609 (WHP), 2010 WL 2927440, at *5 (S.D.N.Y. July 1, 2010) ("A municipality cannot be liable for acts by its employees which are not constitutional violations.").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment in Defendants' favor and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 24, 2019
       Brooklyn, New York